IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| DORIS LEE CLARK, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 5:16-cv-40 |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | By:    Joel C. Hoppe |
|     Defendant. ) | United States Magistrate Judge |

    Plaintiff Doris Lee Clark, proceeding pro se, asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence. Therefore, I recommend that the Court **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 14, and **AFFIRM** the Commissioner's final decision.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through

four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Clark protectively filed for DIB on June 20, 2013, Administrative Record ("R.") 11, ECF No. 10, alleging disability caused by rheumatoid arthritis, hepatitis C, Methicillin-resistant Staphylococcus aureus ("MRSA"), and auto-immune disorder, R. 67. At the time of her alleged onset of disability of March 11, 2013, she was fifty-nine years old. *Id.* Disability Determination Services ("DDS"), the state agency, denied her claim at the initial, R. 67–78, and reconsideration stages, R. 80–95. On November 24, 2015, Clark appeared with counsel[1] and testified at an administrative hearing before ALJ Marc Mates. R. 39–65. A vocational expert ("VE") also appeared and testified about Clark's past work. R. 60–65.

On February 2, 2016, ALJ Mates issued a written decision denying Clark's DIB application. R. 11–31. The ALJ determined that Clark had not engaged in substantial gainful activity since her alleged onset of disability. R. 13. He then found that Clark had severe impairments of degenerative disc disease, osteoarthritis, arthralgias, borderline intellectual functioning, mood disorder, and anxiety disorder. R. 13–14. All other impairments, including hives, rheumatoid arthritis, hepatitis C, and cataracts, were deemed non-severe. *Id.* The ALJ found that none of these impairments met or medically equaled the severity of one of the listed impairments. R. 14–17. As to Clark's residual functional capacity ("RFC"), ALJ Mates determined that she could perform light work,[2] except that she could not climb ladders, ropes, or

---

[1] Clark retained counsel through the administrative stages of her application, but filed her complaint with the Court pro se. ECF No. 2. There is no indication in the record of when her representation ceased.

[2] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. § 404.1567(b). A person who can meet these lifting requirements can

3

scaffolds, and she could perform other postural activities, such as balancing and stooping, on an occasional basis. R. 17. She could handle both simple, routine tasks and detailed, complex tasks and sustain her concentration toward such tasks for two-hour segments, but she should not work in a fast-paced production environment or be subjected to strict production quotas. *Id.* She had no social limitations and could respond appropriately to infrequent changes in a routine work setting. *Id.* Based on this RFC and the testimony of the VE, the ALJ found that Clark could perform her past relevant work as a housekeeper/cleaner. R. 30–31. Therefore, ALJ Mates concluded that Clark was not disabled. R. 31. The Appeals Council denied Clark's request for review, R. 1–3, and this appeal followed.

III. Discussion

Clark generally argues that ALJ Mates wrongly concluded that she was not disabled and that she should be awarded benefits, or, in the alternative, her case should be remanded to the Commissioner. Pl.'s Br. 1–2, ECF No. 13. Construing Clark's brief liberally, as I must do given her pro se status, she takes issue with the ALJ's finding at step two that her rheumatoid arthritis was not a severe impairment. *Id.* at 1. Next, she challenges ALJ Mates's conclusion that she can do her past relevant work given her impairments, which raises a general objection to his RFC finding. *Id.* at 2. Last, she contends that the evidence she submitted to the Appeals Council undermines the ALJ's decision. *Id.*

A.   *Step-Two Finding*

Clark asserts that she is disabled because of her rheumatoid arthritis, which the ALJ found to be a non-severe impairment at step two, R. 14. Clark does not identify any of the other

---

perform light work only if she also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

severe impairments noted by the ALJ as contributing to her disability. At step two, the ALJ determines whether a claimant has a "severe medically determinable physical or mental impairment . . . or combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii).

> [A]n impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1520(c), 404.1522(a). This determination "requires a careful evaluation of the medical findings that describe the impairment(s) . . . and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *2.

In his opinion, ALJ Mates concluded that even though Clark received regular treatment for rheumatoid arthritis, "it did not even minimally affect her ability to carry out basic, work-related [functions]." R. 14. He identified several treatment notes from Clark's treating rheumatologist, Gregory Pudhorodsky, M.D., in support of this finding. Notably, Dr. Pudhorodsky frequently opined that Clark's rheumatoid process was under good control or not particularly active, *id.* (citing R. 298–301, 459–64, 472–75, 555–58, 563–68, 572–76), and he questioned whether she actually had rheumatoid arthritis, *id.* (citing R. 558, 564), noting that her symptoms were more attributable to other causes, such as a myofascial base, degenerative joint disease, or a combination of hepatitis C and cryoglobulinemia, *id.* (citing R. 558–61, 572–76, 935–39). Moreover, Dr. Pudhorodsky often observed little to no synovitis during physical

examination, *id.* (citing R. 465–71), and he treated her conservatively[3] with medications, *id.* (citing R. 298–301).

ALJ Mates accurately portrayed Dr. Pudhorodsky's treatment and findings, and Clark did not identify any contradictory evidence. Considering the ALJ's analysis of the medical evidence, and having reviewed the administrative record, I find that substantial evidence supports his conclusion that Clark's rheumatoid arthritis was a non-severe impairment primarily because it "did not result in any signs on physical exam and [was] repeatedly noted by her rheumatologist as not being the cause of her pain, despite elevated serology testing." *Id.* Even if ALJ Mates erred in finding Clark's rheumatoid arthritis non-severe, he nonetheless discussed the medical and opinion evidence relevant to her rheumatoid arthritis as well her other impairments in assessing her RFC. R. 18–30. Accordingly, his step-two finding, if in error, would be harmless.

B.   *RFC Challenge*

I construe Clark's objection to the ALJ's adverse decision as a general challenge to his RFC finding that she is capable of light work with some additional limitations.[4] A claimant's RFC is the most she can do on a regular and continuing basis despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-*

---

[3] The ALJ did not explain why treating rheumatoid arthritis with medications, rather than some other form of treatment, provided a basis for questioning the severity of Clark's impairment. Nonetheless, her treatment with steroids and pain medications appears to have been effective in controlling any symptoms associated with rheumatoid arthritis, *see* R. 555, and the ALJ's other reasons withstand scrutiny.

[4] Because Clark never alleged disability stemming from her mental impairments and on appeal only identifies a physical impairment (rheumatoid arthritis) as contributing to her disability, I confine my discussion of the ALJ's RFC to the physical impairments. I note, however, that the ALJ found severe mental impairments and accounted for them in the RFC based on Clark's treatment history. The ALJ discussed the medical evidence relevant to Clark's mental impairments, and he relied on the findings of the DDS mental health experts and the report of a consulting examiner in assessing her mental residual functional ability. *See* R. 28–30. His decision is supported by substantial evidence.

6

*Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). The ALJ's RFC assessment "must include a narrative discussion describing" how specific medical facts and nonmedical evidence "support[] each conclusion," *Mascio*, 780 F.3d at 636, and why he discounted any "obviously probative" conflicting evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

In formulating the RFC, ALJ Mates first addressed Clark's testimony at the hearing, her most recent function report, her pain questionnaire, and her brother's third-party function report. R. 18–19. Next, he thoroughly recited the medical evidence from her alleged onset date through October 2015 (the date of the most recent medical evidence then before the ALJ). R. 19–26. ALJ Mates then concluded that although Clark's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he did not find her subjective statements entirely credible. R. 26. Last, ALJ Mates evaluated the opinion evidence. He gave the opinions of the DDS experts considerable but partial weight, adopting their restrictions but adding further postural limitations in order to give Clark the benefit of the doubt. R. 28–29. The ALJ also afforded little weight to the opinions of Clark's treating physicians, Dr. Pudhorodsky and Donald Lee, M.D., her family medicine doctor. R. 29–30. Overall, ALJ Mates stated that the formulated RFC was "supported by the opinions of the State agency medical consultants, the claimant's limited abnormalities on exam, her positive response to conservative treatment, and the overall evidence of record." *Id.*

7

Again, Clark does not allege any specific challenges to ALJ Mates's RFC, but rather contends that she is indeed disabled, and thus his decision "was erroneous, not supported by substantial evidence in the record, and/or contrary to law." Pl.'s Br. at 2. I disagree. ALJ Mates supported each of his explanations with evidence from the record, which he accurately summarized. *See* R. 19–26. For example, despite Clark's subjective complaints of tenderness and pain, various physical examinations from March 2013 through early September 2015 were generally unremarkable, as she primarily displayed good range of motion in her joints, steady gait, good grip strength, and limited to no swelling or demonstrable synovitis in the extremities. *See* R. 301, 303, 308, 324–25, 335, 371–72, 376–77, 382, 387, 403, 405–06, 409, 431, 437, 447, 463, 471, 475, 542, 546, 552, 554, 557, 560, 567, 575, 591, 611, 623, 631, 650, 668, 762–63, 809–10, 832, 877, 938–39, 941–42, 945, 950–51. The ALJ also identified the pertinent imaging, which showed degenerative changes, but no acute osseous abnormality or humeral dislocation in her right shoulder, R. 450; early degenerative changes of the patellofemoral joint, but no evidence of fracture or other significant bone or joint space abnormality in her right knee, R. 684–85; possible rheumatoid arthritis in her cervical spine at C1-C2, as well as other degenerative spondylotic changes from C4 through C7, R. 682–83; and no abnormal findings in her left knee, R. 686–87. Moreover, despite worsening knee symptoms in August 2015, Clark responded positively to bilateral knee injections. R. 25–26; *see also* R. 938–39, 942, 946–47, 951.

The ALJ also adequately assessed Clark's credibility. The regulations set out a two-step process for evaluating a claimant's allegation that she is disabled by symptoms, such as pain, caused by a medically determinable impairment. *Fisher v. Barnhart*, 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. § 404.1529). The ALJ must first determine whether objective

medical evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of pain alleged. 20 C.F.R. § 404.1529(a)–(b); *see also Craig*, 76 F.3d at 594. If the claimant clears this threshold, then the ALJ must evaluate the intensity and persistence of the claimant's pain to determine the extent to which it affects her physical or mental ability to work. SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016); *see also Craig*, 76 F.3d at 595. The ALJ cannot reject the claimant's subjective description of her pain "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. § 404.1529(c)(2). The ALJ must consider all the evidence in the record, including the claimant's other statements, her daily activities, her treatment history, any medical-source statements, and the objective medical evidence, *Craig*, 76 F.3d at 595 (citing 20 C.F.R. § 404.1529(c)), and must give specific reasons, supported by relevant evidence in the record, for the weight assigned to the claimant's statements, *Eggleston v. Colvin*, No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013).

As to Clark's physical impairments, ALJ Mates explained that her "limited deficits; conservative treatment, with an emphasis on medication, with good control; and longstanding physical conditions that did not stop her from engaging in substantial gainful activity previously," which he buttressed with specific examples from the record, all belied her complaints of disabling pain and symptoms. R. 26–27. For instance, throughout her treatment, Clark typically had good range of motion in all joints, limited to no extremity swelling, little synovitis, and varied reports of tenderness. R. 26. Her treatment was also limited to medications such as Prednisone and other analgesics such as Percocet, gabapentin, and Cymbalta, which were effective in controlling her symptoms. *Id.* The ALJ additionally added that Clark's daily activities further undermined her statements about the severity of her symptoms because her

9

"allegations of debility seem[ed] inconsistent with her reported daily activities, which include[d] babysitting and a wide range of household chores." R. 27 (citing R. 942). These activities, notwithstanding Clark's other allegations of limitations, *see* R. 264–71, support the ALJ's credibility finding. Accordingly, I find that the ALJ's analysis of the medical record and Clark's activities support his finding that despite her pain, Clark could perform light work.

ALJ Mates also addressed the pertinent opinion evidence. The regulations classify medical opinions by their source: those from treating sources and those from non-treating sources, such as examining physicians and state-agency medical consultants. *See* 20 C.F.R. § 404.1527(c). A treating physician's opinion "is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(2). An ALJ may reject a treating physician's opinion in whole or in part if there is "persuasive contrary evidence" in the record. *Hines*, 453 F.3d at 563 n.2; *Mastro*, 270 F.3d at 178. The ALJ must "give good reasons" for discounting a treating physician's medical opinion. 20 C.F.R. § 404.1527(c). Furthermore, in determining what weight to afford a treating source's opinion, the ALJ must consider all relevant factors, including the relationship—in terms of length, frequency, and extent of treatment—between the doctor and the patient, the degree to which the opinion is supported or contradicted by other evidence in the record, the consistency of the opinion with the record as a whole, and whether the treating physician's opinion pertains to his or her area of specialty. *Id.*

Clark's treating physicians, Drs. Lee and Pudhorodsky, opined that Clark was disabled because of her rheumatoid arthritis. ALJ Mates, however, afforded these opinions little weight. Dr. Lee never offered a functional assessment, but merely concluded on several occasions that

10

Clark was disabled or precluded from working because of her rheumatoid arthritis. *See* R. 382, 387, 447, 592, 612, 648. In discounting this opinion, ALJ Mates explained that he was not an orthopedic or rheumatology specialist; he appeared to rely heavily on Clark's subjective complaints, which the ALJ adequately discounted; his generalized findings of debility were inconsistent with Clark's conservative treatment of medications and injections, as well as his own examinations of the claimant, which were largely unremarkable; his finding of disability was an issue reserved to the Commissioner; and he did not provide any specific limitations regarding Clark's functioning. R. 30. The ALJ properly relied on each of these reasons in evaluating and discounting Dr. Lee's opinion. *See* 20 C.F.R. §§ 404.1527(c), (d)(1).

In an opinion dated May 15, 2015, R. 534–37, which he reaffirmed months later in an additional letter, R. 917, Dr. Pudhorodsky concluded that because of Clark's rheumatoid arthritis and osteoarthritis, she would experience limitations in sitting, standing, walking, lifting, carrying, twisting, stooping, crouching, squatting, climbing, reaching, handling, and fingering. R. 534–536. Dr. Pudhorodsky noted that these were estimates and not the result of functional testing. *Id.* As a result, she would be off task twenty percent of the time, would be incapable of even low stress work, and would miss about four days of work per month. R. 537. ALJ Mates, however, explained that Dr. Pudhorodsky's endorsements of disability based on rheumatoid arthritis were not well supported by or consistent with the other evidence of record, and his findings of significant functional limitations were not consistent with mixed signs on physical examination and MRI tests. R. 29. Yet again, the ALJ properly utilized this reasoning in discounting Dr. Pudhorodsky's opinion. Dr. Pudhorodsky frequently observed little to no demonstrable synovitis on examination. R. 301, 463, 475, 542, 552, 557, 560, 575, 938, 945. Clark often had full range of motion in her joints. R. 463, 552, 557, 575, 945, 951. Her

11

rheumatoid arthritis was generally well controlled by medication. R. 463, 538, 555. The imaging did not reveal significant deficits. R. 450, 682–87. Moreover, Dr. Pudhorodsky consistently explained that his findings on physical examination were not indicative of the presence of rheumatoid arthritis, and thus her pain was likely the result of other conditions, such as degenerative joint disease, myofascial pain, or a combination of hepatitis C and cryoglobulinemia. R. 542, 552, 557, 560, 567, 575, 939. The ALJ accurately discussed the evidence of record, and his conclusions are reasonable and supported by that discussion. Thus, ALJ Mates properly discounted Dr. Pudhorodsky's opinion as inconsistent with his own treatment of Clark.

Overall, ALJ Mates appropriately considered all the evidence—subjective, objective, and opinion—in crafting Clark's RFC. He adequately explained each element of this RFC, which he then used, in conjunction with the VE's testimony, to find that Clark could perform her past relevant work as a housekeeper/cleaner. The ALJ's thorough and well-reasoned analysis is thus supported by substantial evidence.

C.   *New and Material Evidence*

Clark additionally asks that "[s]trong consideration be given to the letters presented by Dr. Lee and Dr. Pudhorodsky," which were not in the record before the ALJ, but were submitted to the Appeals Council. Pl.'s Br. at 2. In deciding whether to grant or deny review, the Appeals Council must consider any additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96

12

(4th Cir. 1991) (en banc)). The Appeals Council will then grant review if it finds that "[t]he action, findings or conclusions of the [ALJ] are not supported by substantial evidence," 20 C.F.R. § 404.970(a)(3), including any additional evidence that it was required to consider.

Here, the Appeals Council incorporated the letters from Drs. Lee and Pudhorodsky into the record, R. 5, and, in denying Clark's request for review, noted that it "considered" this evidence, but found "that the additional evidence does not provide a basis for changing the [ALJ's] decision," R. 2. The Appeals Council offered no explanation for this finding, *see id.*, as is its prerogative, *see Meyer*, 662 F.3d at 705 ("[N]othing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."). Under such circumstances, this Court must review the entire record, including the additional evidence, to determine whether substantial evidence supports the ALJ's underlying factual findings. *Meyer*, 662 F.3d at 704; *Riley v. Apfel*, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000). This can be a difficult task where, as here, the Appeals Council did not explain why the additional evidence did not render the ALJ's "action, findings, or conclusion . . . contrary to the weight of evidence" now in the record. *See Riley*, 88 F. Supp. 2d at 579–80.

A federal court reviewing the Commissioner's final decision is not permitted to make factual findings or attempt to reconcile new evidence with conflicting and supporting evidence in the record. *See Meyer*, 662 F.3d at 707. Courts instead maintain the appropriate balance by reviewing the entire record to determine if there is a "reasonable possibility" that the additional evidence would change the Commissioner's final decision that the applicant is not disabled. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013). Remand is required where "the new evidence 'is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports,'" *Sherman v. Colvin*, No.

13

4:13cv20, 2014 WL 3344899, at *10 (W.D. Va. July 8, 2014) (quoting *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013)), or where it undermines the ALJ's factual findings and rationale or fills an "evidentiary gap [that] played a role in [the ALJ's] decision" to deny benefits, *Meyer*, 662 F.3d at 707; *cf. Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where evidence submitted to, but not considered by, the Appeals Council "contradict[ed] both the ALJ's findings and underlying reasoning" for denying Jackson's claim and "reinforced the credibility of Jackson's testimony").

The additional letters from Drs. Lee and Pudhorodsky do not present a reasonable possibility of changing the Commissioner's final decision. Although the Appeals Council did not offer any explanation for why it chose not to grant review, "the lack of additional fact finding does not render judicial review of the Commissioner's decision impossible [because] the record provides an adequate explanation for the decision." *Brown*, 969 F. Supp. 2d at 446 n.4. A review of both letters reveals nothing that "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Dunn*, 973 F. Supp. 2d at 642. Rather, they are cumulative of previously espoused opinions, and thus the ALJ's original analysis is applicable. Yet again, Dr. Lee did not include any specific functional limitations, but merely relayed Clark's most recent symptoms from her last examination. R. 960. He is not a specialist, and his overall conclusion that Clark is disabled is an issue reserved to the Commissioner. *See* R. 30. Meanwhile, Dr. Pudhorodsky's letter contests the ALJ's recitation of the medical evidence, particularly his findings. R. 962–64. Although an ALJ may not selectively recite the evidence in order to better support his opinion, *see Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017), this did not occur here. ALJ Mates thoroughly and accurately addressed all the relevant medical evidence, including Dr. Pudhorodsky's findings. Dr. Pudhorodsky reviewed

14

a few of his treatment notes that he felt were given short shrift in the ALJ's opinion, but he does not explain how the omissions he identified related to the functional limitations he claimed that Clark suffered from, nor does he explain how including these findings would change the ALJ's analysis. Although Dr. Pudhorodsky certainly disagrees with the ALJ's RFC determination, he does not present any additional evidence that would call into question whether that determination is supported by substantial evidence. As such, this subsequent letter does not offer a new contradictory viewpoint that the Commissioner needed to address. Therefore, the Appeals Council did not err in declining to grant Clark's request for review.

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's final decision. Accordingly, I respectfully recommend that the Commissioner's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the Commissioner's final decision be **AFFIRMED**, and this case be **DISMISSED** from the Court's active docket.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: August 7, 2017

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge